[No. 3925.   Decided July 3, 1901.]

J. J. McDONALD, *Respondent,* v. A. W. SVENSON *et al., Appellants.*

MASTER AND SERVANT — INJURY TO SERVANT — CONTRIBUTORY NEGLIGENCE.

Where a vessel was moored within two feet of a dock, and no method was provided by the master for reaching the dock from the vessel, other than that afforded by stepping from the pin rail or the mizzen rigging to the dock, a longshoreman who had been working on the vessel for three days and a half, who was injured by being precipitated on a pile between the vessel and the dock, because of the breaking of a ratline in the rigging upon which he had stepped to gain the dock, was not guilty of contributory negligence, because he used that method instead of a gang plank, when it was customary for the master and all the sailors to use the ratlines for stepping ashore, and the gang plank had never been put out except in a couple of instances for the use of ladies.

Appeal from Superior Court, King County.—Hon. ORANGE JACOBS, Judge. Affirmed.

*Metcalfe & Jurey,* for appellant.

*Wilmon Tucker* and *Ivan L. Hyland,* for respondents.

The opinion of the court was delivered by

DUNBAR, J.—Action for damages for personal injuries against the owners of the schooner Fred E. Sander, and the master thereof. While this vessel was lying moored alongside the end of the wharf at Ballard, taking on a cargo of lumber from the wharf, the respondent was employed thereon as a longshoreman, and was engaged in storing lumber in the hold of the vessel. The space between the vessel and the wharf was about two or three feet, the vessel being as near as it could conveniently be brought. At high tide the deck of the vessel was a little above a level with the wharf, and at low tide about five feet below the wharf. The mizzen rigging, from which the respondent fell, consists of three wire cables, passing up through the rail of the ship, converging as well as inclining inward, as they proceed, to one connection high up on the mast. The forward one of these shrouds, together with the center one, constitute the fore mizzen rigging. The hindmost one, together with the center one, constitute the aft mizzen rigging. About two feet above the rail, a large iron bar, called the shear pole, extends across the fore and aft rigging parallel with the rail, and is securely lashed to each of the shrouds of the mizzen rigging. About two feet above the shear pole, and parallel with it, two pieces of timber, each two by six inches, are lashed together, clamping the shrouds of the mizzen rigging and constituting practically a solid piece of timber, four by six inches, and extending to the fore and aft mizzen rigging, constituting what is called the pin rail. Rungs or rat-lines, —pieces of wood about one and one-half inches in diameter,—are lashed on the shrouds of the fore and aft mizzen rigging at intervals of from about eighteen inches to two feet, and constitute a ladder for going aloft. There is one of these rungs below the shear pole, and one between

the shear pole and the pin rail. It is admitted that both the shear pole and the pin rail are sufficiently strong to bear the weight of a man in jumping from them to the wharf. At the time of the accident the tide was out, and the vessel was resting upon the mud flats. When the dinner hour was announced, the respondent started to go to the wharf, climbed up the rigging until he reached one of these ratlines, which he says was on a level with the wharf, turned and attempted to step from the ratline to the wharf, when the ratline broke, and he was precipitated into the waters below between the vessel and the wharf, striking a pile which had been left there, and causing the injury of which he complains. Upon the trial of the cause, after the plaintiff's testimony was in, a motion for judgment was made by the defendants on the ground that the testimony of the plaintiff was not sufficient to warrant a verdict. The motion was overruled, the defendants introduced their testimony, the cause was submitted to the jury, and a verdict for $1,200 was rendered in favor of the plaintiff. Judgment was entered in accordance with the verdict, from which judgment this appeal is taken.

It is contended by the appellants that the complaint did not state facts sufficient to constitute a cause of action. No demurrer, however, was interposed to the complaint, nor was there any objection to the admission of testimony under it; and the objection is raised here for the first time. We think the complaint is amply sufficient to sustain the verdict, after judgment, at least, if, indeed, it was not invulnerable to a demurrer,—a question on which we are not called upon to pass.

A great many authorities are cited, and much discussion has been indulged in, in relation to the law governing the responsibility of masters and servants. This court has so often passed upon this question that it would serve no good

purpose to review these authorities again. It may be said, in accordance with the rule so often promulgated by this court, and in fact by all other courts, that it is the duty of the master to furnish a safe place for the servant to work in, and safe appliances for him to work with, and that it is equally the duty of the servant to exercise common-sense caution in operating such appliances, and he is also responsible for the result of apparent dangers. An amplification of this statement would not make the law appear any plainer. So that the pertinent question here is, Under the circumstances surrounding this case, was the respondent guilty of contributory negligence in undertaking to step from the ratlines to the wharf, instead of either stepping from the pin rail, or calling upon the master to furnish him a gang plank by which to reach the wharf? The respondent was very sharply cross-examined, and was made to assert that he had not complained to the master about the method of exit; it appearing that the manner in which he left the boat upon the day of the accident was the manner in which he had been accustomed to leave it during his employment on that ship,—which had been for three days and a half,—and the manner in which others, including the master, had been accustomed to leave it. But we do not think that the respondent was called upon to ask the master to put out a plank to assist him in reaching the wharf, or to complain that no plank was there, for the reason, that, as the rigging was commonly used for that purpose, he had a right to assume that the means provided were, in the absence of any apparent danger, safe means. It is not for a longshoreman, especially, who is in no way connected with the ship, to inspect the rigging of the ship, to ascertain whether or not it is kept in a safe condition. He has a right to assume that the inspection has been made by those who have control and care of the ship, and that he

will not be called upon to make his exit from the boat over a way which is dangerous. There was testimony in the case showing that this particular ratline was of fir, and that it was more or less decayed. The respondent offered testimony, also, showing that these ratlines were ordinarily made of hard timber, while in this instance they were made of fir; also that the ratlines were usually made of rope with wood on top to prevent the wearing of the rope, while in this instance there was no rope under the wood, and nothing to protect the ratlines but their own inherent strength. This ratline was about two feet and a half long, and it is earnestly contended by the appellants that it was used by the respondent for a purpose for which it was not originally constructed, and for which it was not generally used; that it was constructed and used by the sailors for the purpose of ascending to the rigging above; that the respondent could have as conveniently stepped upon the pin rail, which is conceded to have been a secure footing, as from the ratline; and that having chosen the least secure way of leaving the ship, his master cannot be held responsible for damages which ensued. It is also contended that ratlines are not intended to hold a man's full weight, but that, as in the case of a ladder, the weight of the person ascending would be distributed by holding on to the sides of the ladder with his hands, and that therefore the respondent used the ratline in this instance for an unusual purpose. But we think the distinction attempted to be made here is not a sensible one. These rungs or ratlines are made for the ascending of sailors in all sorts of weather, and under all circumstances, when they cannot be presumed to be particularly upon their guard in relation to the exact amount of weight that is placed upon them, and they have a right to rely upon the safety of the appliances prepared for their ascension.

If this ratline had broken when a sailor was ascending it legitimately, there can be no question of the responsibility of the master under the general rule. Under the circumstances as shown here, its use was legitimate, because it was the common way by which the workmen ascended from the deck of the vessel to the wharf. Much stress is laid by the appellants upon the fact that the respondent had notice that this was not a safe way of egress, from the fact that on two different occasions a gang plank had been put out for the purpose of transferring the captain's daughters from the ship to the wharf. But it seems to us that no weight can be attached to such a circumstance as this; for, however safe the rigging way may have been for sailors or for men, it might not be said to be either safe or appropriate for the egress of women. The testimony of the respondent was to the effect that he stepped upon the round which was even with the wharf; that, when he came to the place that was even with the wharf, he simply stepped towards the shore, and would have reached there, without any question, had not the round broken. It cannot be said that the pin rail would always be in a convenient position to step upon for the purpose of reaching the wharf; for, as the vessel rises or sinks according to the condition of the tide, the pin rail might be absolutely inadequate. The rigging was there used commonly and by the master for the purpose of reaching the wharf. The respondent was justified in concluding that it was intended to bear a man's weight. That would be its natural and obvious purpose. And we are unable to say that, as a question of law, the respondent was guilty of contributory negligence in using the means provided for ascending from his work to the wharf; and we would have to so hold in order to reverse the case on the proposition of negligence, for all the circumstances of the case, and the ques-

tion of whether it was negligence under the circumstances as proven, as well as all questions of weight of testimony on matters upon which the testimony was conflicting, were submitted to the jury.

It is also contended that the court erred in certain instructions, but an examination of the instructions convinces us that the law as announced by the court was fully as favorable to the appellants as it ought to have been.

There were some general remarks to the jury indulged in by the court, to which exceptions have been taken by the appellants; but, while the talk of the court was rather unnecessary, we are convinced that it was entirely harmless, and that the appellants could have been in no wise injured thereby.

The judgment is affirmed.

Reavis, C. J., and Fullerton, Anders, Mount, Hadley and White, JJ., concur.